IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

ROBIN BAKER,                          *

    Plaintiff,                    *

vs.                                   *
                             CASE NO. 4:26-CV-173 (CDL)

VGW US INC., *et al.*,                *

    Defendants.                   *

_____

O R D E R

Robin Baker alleges that Defendants operate two "illegal and unlicensed gambling websites," ChumbaCasino.com and Luckylandslots.com. Compl. ¶ 1, ECF No. 1. Baker purchased "Sweeps Coins on ChumbaCasino.com and Luckylandslots.com and lost money gambling on those websites." *Id.* ¶ 5. According to Baker, Defendants represented that their websites were legal in Georgia even though they were not, and Baker would not have used the websites if she had known they were illegal. *Id.* ¶¶ 6-8. She asserts several claims under Georgia law, including claims under Georgia's Uniform Deceptive Trade Practices Act and Georgia's gambling contracts statute, and she seeks to represent a class of similarly situated Georgia citizens. Baker contends that diversity jurisdiction exists under 28 U.S.C. § 1332(d).

Defendants VGW Holdings US Inc., VGW US Inc., VGW Luckyland Inc., and VGW Malta Ltd. filed a motion to compel arbitration,

asserting that Baker agreed to an arbitration provision when she accepted Defendants' online terms of service. For the reasons set forth below, the Court grants the motion (ECF No. 18).

DISCUSSION

**I.  Legal Standard**

The Federal Arbitration Act "reflects a 'liberal federal policy favoring arbitration.'" *Tejon v. Zeus Networks, LLC*, 174 F.4th 1322, 1326 (11th Cir. 2026) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). But parties cannot be forced to arbitrate if they have not agreed to do so. State law determines whether an arbitration agreement exists. *Id.* (citing *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1330 (11th Cir. 2016)). Here, the parties agree that the Court must look to Georgia law to determine whether an enforceable arbitration agreement exists.

If a party moves to compel arbitration, then "9 U.S.C. § 4 provides the governing procedure." *Lamonaco v. Experian Info. Sols., Inc.*, 141 F.4th 1343, 1347 (11th Cir. 2025). "If the existence of the agreement is not genuinely disputed, the court must compel arbitration." *Id.* (citing 9 U.S.C. § 4). But if the opposing party raises a genuine dispute of material fact as to contract formation, the court must hold a summary trial. *Id.* "In short, the § 4 framework mirrors summary judgment." *Id.* (citing *Bazemore*, 827 F.3d at 1333). "These principles apply equally to

2

so-called 'clickwrap' agreements, in which users assent to terms by clicking a button near a disclosure referencing those terms." *Id.* "Whether a clickwrap agreement forms a valid contract depends on state contract law." *Id.* In Georgia, clickwrap agreements and browsewrap agreements can bind an application user to the application's terms and conditions as long as there is conspicuous notice of the terms and notice of what conduct indicates assent to those terms.[1] *Thornton v. Uber Techs., Inc.*, 858 S.E.2d 255, 259 (Ga. Ct. App. 2021) (finding that a conspicuous "browsewrap" agreement which informed a user that creating an account would constitute assent to an application's hyperlinked terms and conditions *can* bind a user, though there was a genuine fact question on whether the terms were concealed by an on-screen keyboard that appeared on the user's smartphone during the registration process).

## II.   Factual Background

Defendants are subsidiaries of VGW Holdings Pty Ltd., and they develop casino-themed games, including the online games *Chumba Casino* and *Luckyland Slots*.  To play casino-style games on

---

[1] A "clickwrap agreement" generally requires a user to manifest assent to terms and conditions by clicking a box after being presented with terms and conditions.  *Thornton v. Uber Techs., Inc.*, 858 S.E.2d 255, 259 n.1 (Ga. Ct. App. 2021).  In contrast, a browsewrap agreement "does not require the user to manifest assent to the terms and conditions expressly" but does present the terms and state that by creating an account, the user agrees to the terms and conditions.  *Id.* (quoting *Hines v. Overstock.com, Inc.,* 668 F.Supp.2d 362, 366 (E.D.N.Y. 2009)).

the websites, a player must create an account.  When a player establishes an account, she receives virtual "gold coins."  Compl. ¶ 72, ECF No. 1.  If a player runs out of virtual gold coins, she cannot play the games unless she pays real currency to purchase additional virtual gold coins.  *Id.* ¶¶ 72-73.  When a player purchases gold coins, she also receives "sweeps coins."  *Id.* ¶ 74. A player can use sweeps coins to play the casino-style games in "promotional sweepstakes mode," where the sweeps coins "carry real monetary value and can be redeemed for prizes and money."  *Id.* ¶ 71.  Baker alleges that she purchased gold coins and sweeps coins on both ChumbaCasino.com and Luckylandslots.com and that she lost money gambling on those websites.  *Id.* ¶ 5.  She claims that the websites' games constitute illegal gambling under Georgia law, and she seeks damages on behalf of herself and a class of others who are similarly situated.

## III. Claims Related to Luckyland Slots

Defendants move to compel arbitration of Baker's claims related to the *Luckyland Slots* website.  Therefore, Defendants must prove that Baker agreed to arbitrate such claims.  Baker created a *Luckyland Slots* account in April 2022.  As part of the account registration process, Baker accepted the *Luckyland Slots* terms that were in effect at the time by clicking a checkbox stating that she agreed to the terms, which were available by hyperlink.  Cavallaro Decl. ¶ 14, ECF No. 18-2.  On October 9,

2024, Baker accepted an updated version of the *Luckyland Slots* terms, Version 15.0.  *Id.* ¶ 18; Cavallaro Suppl. Decl. ¶ 4, ECF No. 29-1; Cavallaro Suppl. Decl. Ex. 1, Terms & Conditions Acceptance History, ECF No. 29-1 at 4.[2]

Version 15.0 of the *Luckyland Slots* terms contains an arbitration provision, which states:

> By agreeing to these Terms of Service, and to the extent permitted by applicable law, you and VGW Group agree that any and all past, present and future disputes, claims or causes of action between you and VGW Group arising out of or relating to these Terms of Service, the Platform and Games, the formation of these Terms of Service or any other dispute between you and VGW Group or any of VGW Group's licensors, distributors, suppliers or agents, and whether arising prior to or after your agreement to this clause 24, (collectively, "Dispute(s)") will be governed by the procedure outlined below. You and VGW Group further agree that any arbitration pursuant to this clause 24 shall not proceed as a class, group or representative action.

Cavallaro Decl. Ex. A, Luckyland Slots Terms of Service § 24 (Sep. 16, 2024), ECF No. 18-3.  The arbitration provision also includes a delegation clause, which states that the player and VGW Group "agree to resolve any Disputes – including any Dispute concerning the enforceability, validity, scope or severability of this

---

[2] In support of their motion, Defendants submitted a declaration of their employee, who stated that she had personal knowledge based on her review of Defendants' business records that Baker accepted Version 15.0 on October 9, 2024.  Cavallaro Decl. ¶¶ 1, 18.  In support of their reply brief, Defendants submitted the business record that the employee relied on in making that statement.  Cavallaro Suppl. Decl. Ex. 1, Terms & Conditions Acceptance History.  Baker did not object to the supplemental declaration or present any evidence to dispute that she accepted the updated Version 15.0 terms on October 9, 2024.

agreement to arbitrate – through final and binding arbitration" under JAMS Rules.  *Id.* §§ 24.2 & 24.4.  A player may opt out of the arbitration agreement by sending an email to VGW Group stating that the player declines the arbitration agreement.  *Id.* § 24.3.

Version 15.0 of the terms defines "VGW Group, we, us or our" as "VGW Holdings US, Inc. and VGW Luckyland, Inc and related parties."  *Id.* § 1.  It defines "Game" as "any one or more Game(s) available on the Platform," and "Platform" as "the services provided through any URL or mobile application belonging to, or licensed to, VGW Group and branded as part of the 'Luckyland' family of games, including the website located at https://www.luckylandslots.com, and all subdomains, subpages and successor sites thereof, as well as all Games, features, tools and services available thereon."  *Id.*  It also defines "Payment Administration Agent" to include VGW Malta Holding Limited and VGW Administration Malta Limited.

Baker did not point to any evidence to dispute Defendants' evidence that she affirmatively accepted Version 15.0 of the terms and conditions on October 9, 2024.  She also did not point to any evidence that she opted out of this arbitration agreement.  Thus, the present record demonstrates that Baker agreed to the Version 15.0 arbitration provision, including the delegation clause, and there are no genuine fact disputes on that issue.

The arbitration provision is broad, covering "any and all past, present and future disputes, claims or causes of action between" Baker and VGW Group arising out of or relating to the *Luckyland Slots* terms and the *Luckyland Slots* platform and games. *See Pendergast v. Sprint Nextel Corp.*, 691 F.3d 1224, 1229 (11th Cir. 2012) (applying the latest version of terms and conditions that a wireless customer accepted, which applied to "all disputes" between the parties).  The terms broadly define VGW Group to include VGW Holdings US, Inc. and VGW Luckyland, Inc. and related parties, which would cover all the Defendants in this action. Accordingly, on its face, the arbitration provision applies to Baker's claims against Defendants related to *Luckyland Slots*.

Baker argues that that the arbitration provision—including the delegation clause—is unenforceable for lack of consideration. The Court construes this argument as a challenge to the delegation clause.[3] Baker contends that the parties never formed an agreement on the delegation clause (and the broader arbitration agreement) because VGW Group's offer to arbitrate was an illusory promise. In support of this argument, Baker points out that the *Luckyland Slots* terms include an amendments provision which states that VGW

---

[3] The Court recognizes that the delegation provision delegates to the arbitrator the issue of arbitrability and that any challenge to the arbitration agreement as a whole is therefore committed to the arbitrator.  *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1146 (11th Cir. 2015).  Here, Baker presents the issue as a challenge to the delegation provision, so the Court will evaluate that issue.

Group may amend the terms at any time and that such changes will be binding and effective immediately upon publication to the VGW Group platforms. Luckyland Slots Terms of Service § 25.2. Thus, Baker contends, the amendments clause means that there are no real constraints on VGW Group's contractual obligations. But the terms also require VGW Group to notify users of any amendment that would limit their current rights or which may be to their detriment; if a user does not agree to the amended terms, the user "must stop using the Platform." *Id.* § 25.3. And, Version 15.0 permits a user to opt out of the arbitration provision if she does not wish to accept it. *Id.* § 24.3.

In support of her "illusory promise" argument, Baker relies on cases where a contract's amendments clause permitted a unilateral change in the material terms of the contracts (including the arbitration provisions) without any prior notice to the other party or any opportunity for the non-modifying party to reject the changes. *See Douglas v. Johnson Real Est. Invs., LLC*, 470 F. App'x 823, 826 (11th Cir. 2012) (per curiam) (applying Massachusetts law and finding an employer's promise to arbitrate was illusory because the employer retained the right to modify the agreement without notice to the employee); *Johnson v. Cont'l Fin. Co., LLC*, 131 F.4th 169, 179 (4th Cir. 2025) (finding that an arbitration agreement was illusory under Maryland law because the contract allowed the defendant to unilaterally avoid all of its contractual obligations

without notice); *Nat'l Fed'n of the Blind v. The Container Store, Inc.*, 904 F.3d 70, 87 (1st Cir. 2018) (same, applying Texas law).

Here, in contrast, the *Luckyland Slots* terms require VGW to provide users with notice of any changes that would limit their rights or be to their detriment, and users must be given an opportunity to accept those terms before using the platform again. *See* Luckyland Slots Terms of Service § 25.3. Thus, VGW Group could not unilaterally change the arbitration provision or delegation clause without providing its users with notice and an opportunity to avoid being bound by the updated terms by (1) declining to use the platform again or (2) opting out of the arbitration agreement as permitted by Version 15.0. The Court thus finds that the arbitration provision and delegation clause are not illusory. *See Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1374 (11th Cir. 2005) (finding that a dispute resolution policy was not an illusory promise because it could be modified only on notice). Rather, it was an offer to arbitrate that Baker affirmatively accepted on October 9, 2024.

In summary, the Court rejects Baker's challenge to the delegation clause. Baker does not clearly dispute that if her challenge to the delegation clause fails, then she is required to arbitrate her claims against all Defendants related to the *Luckyland Slots* website under Version 15.0 of the *Luckyland Slots* terms. Baker does not dispute that she also agreed to arbitrate

"any other dispute" between herself and "VGW Group" (which in Version 15.0 expressly includes VGW Holdings US Inc. and VGW Luckyland Inc. and includes VGW US Inc. as a related party that is referenced in the "payment administration agent" definition)—which would include her claims related to the *Chumba Casino* website against these entities.  Therefore, the Court grants Defendants' motion to compel arbitration as to all of Baker's claims against VGW Holdings US Inc., VGW Luckyland Inc., and VGW US Inc.

## IV.  Claims Related to Chumba Casino

Defendants also seek to compel arbitration of Baker's claims against VGW Malta Ltd. related to the *Chumba Casino* website.  Baker created a *Chumba Casino* account in 2018 and made one purchase of coins in September 2018.  Cavallaro Decl. ¶ 21.  VGW Malta Ltd. owns and operates the *Chumba Casino* games.  *Id.* ¶ 5.  Defendants did not point to any evidence of the terms and conditions that Baker agreed to in 2018.  Instead, they argue that the longest statute of limitations for any of Baker's claims is four years and that given Baker's allegation that she made a *Chumba Casino* purchase within the statute of limitations, she accessed the website sometime after January 29, 2022, and would have had to agree to the terms in effect at that time.  Defendants submitted the 2024 terms and conditions for *Chumba Casino*.  But there is no evidence that Baker ever agreed to those terms, so they do not

establish that Baker agreed to mandatory arbitration of any claims against VGW Malta Ltd. related to *Chumba Casino*.

Defendants argue that even if Baker did not agree to any *Chumba Casino* terms that provided for mandatory arbitration, her acceptance of Version 15.0 of the *Luckyland Slots* terms requires arbitration of her claims against VGW Malta Ltd. related to *Chumba Casino*. Baker does not dispute that those terms require arbitration of disputes between Baker and "VGW Group." Luckyland Slots Terms of Service § 24. VGW Group is broadly defined as "VGW Holdings US, Inc. and VGW Luckyland, Inc and related parties." Baker did not point to evidence to dispute that VGW Malta Ltd. is a "related party" within the meaning of this definition and is thus entitled to enforce the arbitration clause for claims against it that arise out of the same alleged concerted conduct as the VGW Group entities that are expressly named in Version 15.0. Therefore, the Court grants Defendants' motion to compel arbitration as to all of Baker's claims against VGW Malta Ltd.

CONCLUSION

For the reasons set forth above, the Court grants Defendants' motion to compel arbitration (ECF No. 18). The parties shall proceed to arbitration on all of Baker's claims against Defendants in accordance with the terms of their agreement. The Court stays all proceedings in this Court pending arbitration. *See* 9 U.S.C. § 3. Every ninety days following entry of this order, the parties

11

shall file a joint status report to update the Court on the progress of arbitration.

IT IS SO ORDERED, this 1st day of July, 2026.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA